May it please the Court, good morning. My name is Robert Story. I'm appearing on behalf of Appellant Jenkins. This appeal is about a motion to withdraw a guilty plea. The standard here is fair and just reason for withdrawal of the guilty plea. And this Court has repeatedly held that that is a generous and liberally applied standard. This is a case where Mr. Jenkins, for three straight years, maintained that he was innocent of the crimes that he had been charged of. You know, that happens in every case. I agree with that, Your Honor. But my point is that for three years he maintained he was innocent of the charges. I know. He gets in a car accident shortly before trial. Twenty-eight days. Twenty-eight days, exactly. Okay. The records clearly show that the car accident caused him to lose consciousness and he sustained a concussion. During that period of time that he was in the hospital. He walked out of the hospital that same day. That is correct. With a clean bill of health. I'm not sure I'd go that far, Your Honor. Well, what did the diagnosis say when the discharge? You do admit he was out the same day. I admit that, yes, Your Honor. And there was no reason to hold him. That's correct. Okay. So that's four weeks before he pleads, appears before the court to plead guilty. That is correct. Okay. With counsel. That is correct. All right. No dispute about any of that. One of the things that his counsel did say in the hearing she finally actually had was concussions are strange things. They don't show blood. And people don't exactly know what happens. It requires some medical advice. And I think that is the problem with this particular case. Mr. Jenkins had maintained his innocence for this long period of time. Shortly before trial he has this concussion, this car accident. His attorney has a conference with him, persuades him to plead guilty, and in a very exaggerated and different kind of method pleads guilty. In fact, at one point he says something to the effect that even if a jury doesn't find me guilty, I'm guilty. That doesn't make any sense at all. Well, sure it does. I mean, look, we've been in this business for a long time. Yes, we have, Your Honor. I don't share that it makes any sense. If a jury's not the point of a trial is to prove whether you're guilty or not. We didn't have a trial in this case. And this isn't typical of Mr. Jenkins, is the point. In any case, the problem was more compounded than that. Mr. Jenkins pleaded guilty, I believe, on the 29th of July. October 14th he spoke with his attorney and said, I'd like to withdraw my plea. His response, her response was she took a vacation. Now, the sentencing was set at the time that he pleaded guilty and the court accepted his plea of guilty, right? That's correct. So there was about three or four months while the pre-sentence was going on, correct? That's correct. All right. Now, this July 29th, now we're talking about mid-October. That's correct. He wants to change lawyers. No, he didn't want to change lawyers. He wanted to withdraw his plea. His lawyer wanted to change lawyers. Mr. Jenkins came to his attorney on October 14th and said, I want to withdraw my plea. She responded by going on vacation a week later. She had plenty of time to file the motion to withdraw the plea, but she didn't. She went on vacation. She came back from vacation on November 1st. She didn't do anything for 18 more days. On November 18th, she still didn't file a motion to withdraw the guilty plea. What she filed was a motion to withdraw, substitute her as another attorney. That was heard before the magistrate judge. The magistrate judge denied it. His attorney didn't get around to filing a motion to withdraw the guilty plea until five days before the actual sentencing, through no fault of Mr. Jenkins. Mr. Jenkins had asked her on the 14th. Mr. Jenkins never once said, I want a new lawyer. He simply said, I want a new lawyer. I don't get what your point is. All of this delay means what? It means that she was ineffective as his attorney. By the time she actually had the hearing, she had the hearing to withdraw on the very day that he was to be sentenced. She listed as the standard for proof an evidentiary hearing. She set on her pleadings an evidentiary hearing. This was scheduled for an evidentiary hearing. Mr. Jenkins himself brought from Memphis, Tennessee. Two witnesses. Two witnesses. She references the witnesses. She doesn't put on one shred of evidence in support of it. And I submit that that, in a, in a. Didn't the judge deny the motion for an evidentiary hearing? No, he did not. He denied the motion to withdraw the plea for lack of evidence. There are two reasons that he allowed the withdrawal of that plea. The first reason was it was untimely. It was untimely because of his attorney. He talked to her on October 14th. In fact, the district judge says something to the effect that a month of, it should have happened a month before. What happened five days before in the hearing was actually the day of the sentencing. Yes, sir. What I want to know, this is the same judge who took the plea, right? That's correct. And, and, and you, what you're trying to tell us is that the district judge should have allowed him to withdraw his plea? Is that correct? That is correct. Because there was some evidence now that he was not competent at the time that he entered the plea at the end of July? Yes. All right. Now, you're new in the case, right? You didn't represent him. That's correct. And I'm certain you've been through the plea colloquy. Can you point to me anything in that plea colloquy, either the Q&A from the court to the, to the defendant, not to the defendant's lawyer, but to the defendant, that would raise any kind of signal that this college-educated engineer who had three years, you said, to maintain his innocence would all of a sudden be able to articulate responses to the court and then in his own words, in his own non-lawyer words, tell the judge exactly what he did, including all the essential elements of the offense under Title 18. My point is that he was, he did this in a very exaggerated manner, and he'd done it after this long period of time of maintaining his innocence. Did he get any concessions from the government? Yes, he did. You see, this is the way it works. I mean, you know that's the way it works. You plead not guilty, then you get as much as you can out of the government, and then when you finally think you've gotten as much as you can, you say, okay, now I'll plead guilty. I mean, I sat through those thousands of times. I agree, Your Honor. I'm a defense attorney. I've done this for 30 years. I agree. That's exactly what happened. This is different in a couple of respects. He didn't wait until the probation office says here's what your sentence is going to be. In fact, we're not here appealing the sentence for two reasons. One, he waived that appeal, and two, he thinks the sentence is reasonable had he done the crime. He doesn't dispute the reasonableness of the sentence, and he didn't wait until the P&P office. Okay. Go back to Judge Stafford. What is it about the colloquy itself that suggests this man was disoriented to the point where he should have been allowed to withdraw his plea? His behavior was exaggerated. I don't know what that means. It means it was different than he normally acts. He wasn't his normal self. He had maintained that he didn't do this this entire period of time, and now he maintains it again. I didn't do this. For this brief period of time that he suffered a concussion is when the problem arose. Okay. What I hear you saying is there's nothing in the colloquy itself other than something that you call exaggerated, but we don't know whether this guy's exaggerated or not. So on the face of the colloquy and is viewed by the district court, there's nothing there that suggests that there was anything wrong. That is correct. I think that's a fair statement. The problem is, so now we've got a district court judge who's there looking, listening to, watching this guy the whole time, and he tells us there isn't a shred of evidence that he was operating under the effect of any concussion. And if you look at the police reports, which I know you did, I mean, the guy was ambulatory. He was released. They said he's fine now. No signs of medical physical impairment other than a headache. He's expected to be better in a few hours or a few days. I mean, there was even nothing in the police report that suggests that there's any hangover of this that would go on for 28 days. Your Honor, it's become common knowledge that concussions are unusual things. Football players, hockey players, all kinds of sports people suffer these kinds of injuries, and they're no longer themselves. And that's the very point here. And as to your point about why the judge only had information from the plea colloquy, it's because his attorney was completely ineffective. She has the evidence in court to bring in front of the judge two people that would show that he behaved irrationally and different than he normally did, and she didn't put it on. She even told the judge, I have Mr. Jenkins has brought two people from Memphis to testify, and she doesn't put the evidence on. These are two lay people?  The record is unclarified, Your Honor. Now, you've done enough of these to know that the reason that the law requires the court to address the defendant is just to guard against that very thing. You understand? And so not only that, but your client, in his own words, tells the trial judge, 28 days after he walks out of the hospital with a clean bill of health on his concussion, he tells him, I attempted to further an investment program. I took money that I believed to be fraudulent in nature, and I made statements or caused statements to be made to an investor, would or fashioned a way to keep him from going to law enforcement. What would indicate, out of your client's own mouth, with the attorney probably sitting down, talking straight at that judge that would suggest to any reasonable person that he was not fully competent to enter a plea? Both factually and legally. That's not my problem with this case. I think his attorney dropped the ball in a couple of major ways, first of which is once you have a concussion, you know that you have a concussion, you tell your attorney you have a concussion, that's not the time you have the conversation with the attorney about entering a guilty plea. This is a medical problem that I submit that none of us here, the district judge or the attorney, has the expertise to deal with. What she should have done was hire a medical expert to determine whether or not that was an appropriate plea. So what exactly are you asking us to do, my favorite question? I would like the case remanded. For what purpose? For a hearing to determine whether or not my client was competent to have entered that plea. To do what his attorney should have done in the first place, put on evidence in front of the district judge. He could compare what he saw during the period of time that he spoke with my client to what the medical experts are testifying and make an informed decision about whether or not that plea was properly entered. The government's position is we should do this as a 2255 post-conviction. The problem with that is with a 48-month sentence, my client will have served his time by the time the district judge does what I think he should have done in the first place, have a hearing about this and allow my client to withdraw the plea. And if we go through that process and I'm correct about this, the government's even further prejudiced. We're three, four, five years down the road and evidence simply gets colder and colder and staler and staler. So what I'd like to see happen is this case be remanded to the district judge. I understand that this district judge may be retired. Our last hearing he suggested that. But it should be remanded for a hearing and allow my client to put on the evidence that should have been put on shortly after October. And what was the proffer that was made to the court at the time of sentencing? What were these lay witnesses? I just said that he was acting a little squirrely on the job. Wasn't that about it? I think she used two words. Uncharacteristic and irrational, I think, is the word. Behavior. During this period of time. From the concussion forward. I submit she should have had a medical expert there. My client didn't have any trouble on his own finding a medical expert. Did she have any affidavits from these two witnesses who were present? She did not. Did she make an offer of proof as to what they would testify other than this vague stuff that we're talking about? She did not. And that's my point. This was ineffective from the plea forward. What reasons did she give for wanting to get off the case? She thought she had an ethical dilemma. She was going to have to testify and disclose attorney-client privilege and information, and she didn't think she could do that. And the judge at least initially agreed with her. He said, I see the problem. There's a conflict here. Meaning what? That her client was really crazy even though she said during the plea colloquy she saw no evidence of mental disorientation? Well, in order for her to It seems to me that I get the sense that she was going to have to testify against him. His behavior wasn't exaggerated. This is the way the guy operates and that I had full discussions with him. I saw no evidence whatsoever that he was mentally impaired. I don't think you can glean that from the record. I think the record says Have you talked to her? Not about this. Do you have any declarations from these two witnesses? Have you talked to them? No, I haven't. So you don't even know what they're going to say. But I do have a forensic psychologist saying that this man was depressed and not himself during this period of time. And how many months after the fact was that? I wasn't all impressed with that letter, I'll tell you. You better do better than that if you win this appeal. I certainly will, Your Honor. I assure you I'll have all the witnesses marshaled at that hearing. It was in February. The plea was in December. No, the plea was in July. So it was probably six, seven months. Long time later. But I still submit that concussions are weird things. We don't know what they do. And we as lawyers certainly don't know what they do. You can bring in the NFL to help you. Exactly. I think the National Hockey League is having the same problem. Concussions do things that we as lay people don't understand. The concern, talking about sports, is that a second injury could be paralyzing or fatal or something. That's a concern because, you know, the quarterback gets knocked out. If he's not back in by the fourth quarter, he's certainly in by the next Saturday or Sunday. I don't know that, Your Honor. And fully able to run the offense. I don't know that, and I don't think anybody here knows that. I think that's a medical question. So let me play this out a little bit. Let's say you win. You go back. You convince a judge, either this one or another judge, to allow the plea to be withdrawn. Yes. He's already spent how much time in jail? None. None. So he's looking at what? Four years. So you withdraw the plea. Then what? Then we have the hearing. We withdraw the plea. Then we try the case. And all the concessions go away, and you're subjecting your client to worse possibilities in terms of sentences than he's gotten already. That's correct. He understands that. Are you saying you're sending it back. Do you want us to order the plea to be withdrawn? Well, that wouldn't be my first choice. I mean, if I get to. Or just send it back to consider this evidence that you're talking about. I think there's enough here to show ineffective assistance of counsel and allow him to withdraw the plea. But I think it's unfair to say that you're not going to let him do it. But assume you disagree with me. I suggest that it be remanded. You've done that in the past. In the McCherry case, you've done that. I seem to see my time has long passed up. Thank you. Thank you. Pardon me, counsel. You're basically saying that there was ineffective assistance of counsel. How can you prove that without taking the testimony of Ms. Stanisch? Stanisch. I submit that you can do it for the record. She should have consulted a doctor to begin with. She shouldn't have allowed a guy to do it. Do you think that on a Strickland analysis, she failed to perform with objectively reasonable professional performance? I do. Because a concussion would require her to get medical evaluation before she should allow her client to plead guilty. Correct. And that was only one of four. She continued to repeat the problem. She delayed this for a long period of time. You know, you may be right, but I'm not sure it's appropriate to tag somebody with ineffective assistance of counsel without allowing that person to tell us why this all happened. I'm fine with that. I mean, that's simply not fair. You wouldn't want it to happen to you. The essence of due process is giving everybody an opportunity to be heard, especially on something like that. There are serious consequences of ineffective assistance of counsel now. I agree. I understand I'm a defense attorney, and it happens to me from time to time where I'm called to a hearing to do that sort of thing. And I fully agree with you. And we would be thrilled if you remanded this for a hearing. Okay. Thank you very much. Thank you, Your Honor. May it please the Court. Catherine Newman on behalf of the United States. The district court conducted a Rule 11 canvas. The district court was in the best position to observe the conduct of the defendant, to observe his answers. And after conducting that and doing its analysis, the district court concluded that he was competent and that the plea was entered knowingly and voluntarily. Six months later, or almost six months later, the district court denied a motion to withdraw that plea, finding that there was nothing that was presented to the district court at that time that dissuade him that its initial assessment of the defendant and his competency and the voluntariness of the plea agreement. Here's where I have a problem with that argument. There were two witnesses available and ready to testify. Counsel had asked for some kind of a hearing in order to develop a record on this, and nothing happened. What justifies the district court in apparently ignoring these two witnesses in the request for a brief evidentiary hearing? See, now we don't know what they would have testified. Well, the district court, that is correct. We don't know what they would testify, which again makes this unsuitable for direct appeal of ineffective assistance of counsel. In order to further develop that, the appropriate relief is habeas relief, where their testimony could be developed. But the district court found that. Then you're going to go in and say he waived habeas. I do not. He did not waive habeas under the express language of the plea agreement. But what happened? Were you there? I was. What happened? I mean, here's these two witnesses. Why were they utterly ignored? I mean, they may have had substantive evidence that could have reflected on this. The district court found that based on the submissions by the defense counsel, which her motion, which is in the record, attached the medical papers from the car accident 28 days prior to the plea agreement, that based on that and the arguments of counsel, that the defendant had not made a preliminary showing sufficient to proceed to an evidentiary hearing, sufficient to engage the issue. In short, the district court was not convinced. There was a concussion. Yes. And the witnesses were there to say that the effects of the concussion continued. Yes. Or at least that was the representation of counsel at the hearing. And I still fail to understand why there was no attempt to find out what these witnesses had to say. If they had come in, let's assume for a second they come in and say, look, we have known this man for a long time. Up until this concussion he was X, and then all of a sudden he was Y. He's confused. He's disoriented. All of a sudden he has grandiose thoughts. You know, I mean, that might have been a whole different program here. We just don't know. That's the error that I see in what happened or the failure that I see in what happened to allow him to develop that claim. If it was true, he probably should have been allowed to get out from under the plea. But the district, again, I think it's notwithstanding the colloquy. Well, and I keep coming back to the colloquy. Pardon me. Before we get to the colloquy, let me ask you something. Your statement was that the trial judge found that there was no preliminary showing sufficient to proceed to an evidentiary hearing. Concentrate on this question. What is the scope of review by this Court as to whether the trial judge committed error in making the determination that there was no preliminary showing sufficient? What is the sufficient evidence that would allow us to find either de novo or as an abuse of discretion that the judge was wrong in saying there was no preliminary showing? I'll be careful because I don't want to make any misrepresentations of the Court. I have not researched this particular issue, so I don't know. It appears to be a mixed question of law and fact and subject to the abuse of discretion. But, again, that's my analysis on the fly, and I don't want to overstate the law. Where exactly did the Court say there's been not enough abuse so far to constitute a preliminary showing? On page 157 to 158. Could you read exactly what the judge said, please? The Court. Fair enough. Hold, hold. Let me get. Oh, sure.  It starts at the very last bottom, the very last part of the page. All right. Go ahead, Judge Trump. Fair enough. All right. The request that Mr. Jenkins has made through counsel to have a separate counsel to represent him in connection with the motion to set aside the guilty plea entered on July 28, 2010, that request is denied. There's been no prima facie that is preliminary showing sufficient to inform the Court that Mr. Jenkins on July 28 did not know the consequences of what he was doing. He's not made a fair showing that there's a fair and just cause to set aside the plea of guilty. And then he continues. Again, that's, that lacks any knowledge at all of what these witnesses might say. And I still don't know what they might say. I mean, they might be two idiots that don't say anything. On the other hand, they might be very convincing. We don't know. And there was a request for an evidentiary hearing by a lawyer who's trying to get out from the case. And I still don't understand why that didn't happen, why at least we don't have a record of what they would have said. So if you say there's no prima facie showing, well, she wasn't allowed to make one. See what I mean? Yes, Your Honor. She had submitted evidence of the injury, of the injuries, and the Court determined that the evidence of having a concussion consistent with Crail, which is a Tenth Circuit case that was cited by the defense in the brief. And Crail says the mere proof that Crail sustained a concussion is inadequate to support a plea. Right. And here we've got two witnesses that are going to tell us what in the world was going on in this guy's mind, and nobody bothered to listen to them. And that's the problem with the finding that there hasn't been a prima facie showing. She had asked for one, an opportunity to make one, and it disappeared. Let me ask you this. Do we know what those witnesses would have testified to, to determine whether, if there was an abuse of discretion, it was prejudicial? There is. Their statements are not in the record. So how could we judge now, sitting here, whether these witnesses would have said, well, we noticed that he wasn't acting like he usually does because he was parting his hair on the other side? And I think... We don't know. I think that's, again, this is, there are a series of questions that would need to be developed outside the record in order to present the defendant's claim of ineffective assistance to counsel, which is why this is not suitable for direct review. Well, now you're mixing apples and oranges there, because what is suitable for direct review is whether it was a just reason for denying the request to withdraw the plea. But turning to the instance... You see, the practice pointer here is if you're the defense attorney, you'd have had affidavits or declarations or something or made an offer of proof on the spot as to what these witnesses would testify to. That didn't happen. That goes into the ineffective assistance of counsel question as well as to the just reason to withdraw. Ms. Newman, what was the government's position at the time of sentencing as to this defense motion? Did you oppose? We did. We held an opposition, which is included in the record, and we argued against the motion at... And the basis of your opposition, of the government's opposition to the defense motion? The motion to withdraw the plea? Yes. Was that it was nothing more than buyer's remorse. Right. And then as to the substance of the motion now argued here about the putting on evidence at the time of the sentencing, admissibility, did you oppose? Or was that not the... Did that not come up at sentencing? I don't think the issue was squarely presented to the government. The position the government took, the position that I took at the sentencing, was that we did not need to move, the court did not need to move to a preliminary or to an evidentiary hearing because the evidence presented in the motion to withdraw the plea was so... was insufficient to overcome the... So you opposed an evidentiary hearing? We did. That it was insufficient to overcome the presumption that this court and the Supreme Court has recognized that statements made by a defendant during a guilty plea carry a strong presumption of veracity and subsequent proceedings attacking that plea. Doesn't mean they necessarily automatically every day of the week win. That is true, Your Honor. Well, was there anything at the... from the government's standpoint, anything presented to you that maybe didn't get in front of the court that would suggest that there was any... any problem with the plea taken at the end of July? Now we're going up to October, November, three or four months later. Was there anything submitted in a motion that maybe didn't get in the court file or anything like that that would suggest that... No, Your Honor. ...that would undercut this and fulfill your responsibility to make sure that Brady and all that other stuff that gets in front of the court? No, Your Honor. The government never had an opportunity or never sought an opportunity, frankly, to interview the two witnesses after the hearing, and we were not aware of their existence until... Were they there? They were there. Did you see them?  What do you mean you didn't have an opportunity to talk to them? I said we did not, and we didn't seek an opportunity after the fact. We were not aware of their purpose there until the representations were made by counsel. Did the court make an independent ruling as another ground to deny this, that it was untimely? No. The court in what would be called dicta made a comment about the timeliness in the motion to withdraw as counsel. As we discussed in our briefs, the comments were directed at that portion of the joint motion. I didn't see that the motion to withdraw was – there was a holding that that was untimely. Right. But under either circumstance, there was no – the court considered the motion to withdraw the plea and considered the substance of it. So under Strickland, there was no prejudice suffered as a result of the timeliness of the motion. Well, I'm a little confused here because apparently the defendant, Appellant, is now claiming that the error that he'd like us to find as basis for remand was ineffective assistance of counsel. And all the evidence that I'm hearing is about his concussion. I'm not hearing anything about why counsel is ineffective. Was any of the evidence presented or offered to the judge at that hearing on the grounds that counsel was ineffective? At that time, she wasn't being – he wasn't making a motion to change counsel. That's correct. She was seeking to withdraw. There was no arguments presented to the court at that hearing that she was ineffective. Did the defendant make any proffer that she was ineffective? No, Your Honor. Okay. Thank you. If the Court has no additional questions for me, I'll just submit on the briefs. Mr. Story, we'll give you a moment to report, if you'd like. A minute. Actually, the Court did conclude that it was untimely. Yeah, that's what I'm looking for. Where? That's what I was looking for. I didn't realize I was going to get back up here. There's actually a written memorandum. That was probably minutes of the Court. I apologize. The Court found that the motion to separate appointment of counsel was untimely. Right. The motion to withdraw was untimely. The motion to withdraw itself was untimely. It was only done. But the court hold that it was untimely, and that was a bar. Yes, Your Honor. But you can't point to it. I can't remember that. I apologize. It may be in there. It is in there. It was a minute order right after the hearing. You know, maybe during the next case you can find it and give it to the clerk. I'll be happy to do that. And alert us to it. Yes. As to ineffective assistance of counsel, it's been my experience that if I'm the lawyer, I'm not going to get up and say I'm ineffective. I'm not going to say I'm ineffective if I get called in a 2254. That's exactly why you have to do it in a collateral proceeding, doesn't it? Well, there is case law otherwise, though, and I request you follow that case law. Thank you, Your Honor. All right. Thank you very much. The case of the United States v. Jenkins is submitted. Court thanks counsel for their argument.
judges: Stafford, Trott, Bea